Good morning. Ms. McKee, would you announce our first case for argument, please? Case number 25-1095 from the District of Minnesota, Jacqueline Colson et al. v. Hennepin County. And Mr. Erickson, when you're ready. How's that? Very well. Proceed. May it please the Court, Gregory Erickson and Maxwell Becker, on behalf of Jacqueline and Carrie Borgheim. I asked her for a phonetic pronunciation yesterday, and I knew I was going to butcher her name. The standard of review is de novo, and frankly, because I only have 10 minutes, I'm just going to get to it. Your Honors, Ms. Borgheim and Ms. Colson were Hennepin County workers that were – Ms. Borgheim was terminated for non-testing, and Ms. Colson was forced to test in violation of her sincerely held religious beliefs. Well, let me ask you about that, about the adverse employment action for Ms. Colson. What specifically do you – it was that she was forced to test, is that correct? That is correct, Your Honor. In our complaint at page 5, we allege, first of all, that she stated in her religious exemption that she believes that the involuntary weekly testing also violates her religious belief because it involves an involuntary intrusion into her body and extractions from her body, a temple of God. In the following paragraph, she alleges that the weekly testing for unvaccinated employees is time-consuming and done outside of work hours. The testing process is not private. The policy said just the opposite, though, that she could do it during work hours. Your Honor, we're at the motion to dismiss stage, and the facts in our complaint need to be viewed as true. This is what she's alleging, and she's also alleging – Well, if she was paid outside of work hours, that's not adverse, is it? Well, first of all, in the complaint, there's no evidence that she was paid. That was referenced in our – That's not what I – did you allege that she wasn't paid? Yes. Where is that in the complaint? Because I thought you kind of were hemming and hawing around that. I mean, that it was done after hours, and I thought the other side came back. And again, I understand we're on a motion to dismiss, but I think the – I read it as she was likely paid or could have been paid for it. Okay. So if she could have been paid – All I can say – I mean, are you alleging that she could not have been paid and wasn't paid? I'm not alleging that she could not have been paid, theoretically. I'm alleging that she was not paid for the time that she was working outside of work hours. And we're alleging that she was harmed. Is there any relevance – so this is on our first Hennepin County case. Is there any relevance to the Brocken case on these issues? I think that there's a lot of issues. Obviously, the numbers are different. They were threatening, you know, the loss of $90,000 in income, and, you know, that's why she agreed to resign versus terminate. But she was subject to the same mandates, and obviously this court reversed and remanded that particular decision. The important thing that I want to focus on, other than the payments, okay, she also alleges that the testing process is not private, okay, and that the testers' family members are frequently seen and heard on the testing calls. And additionally, others are – she is forced to test in front of others. Obviously, the intimation from that allegation is she finds that the process is degrading, that she's being treated like a child that isn't able to, you know, be held to her word and test when she gives her word that she will test, okay. So it's very similar to COLE in that way, because you remember, Judge Covas, that in COLE she was forced to walk around with a badge that indicated that she was unvaccinated, and she found that degrading. Is the testing itself a disadvantageous change in the terms, conditions, or privileges of employment? I would 100 percent say yes, Your Honor. And here's the reason. She alleged in her religious beliefs, in her exemption, that the testing would violate her religious beliefs. There are two classes of plaintiffs that I have. There are the class that had the courage and the fortitude to get fired, okay, and then there's the class that had to kind of undergo degrading, you know, humiliating-type behavior because, for example, they were the only wage earner or their family desperately needed the wages that they were earning, okay. I don't think either class should be dismissed or disregarded, as the district court did in this instance. Could I ask you about the other complaint as well? Because I don't want you to run out of time. But the other complaint, I'll tell you the problem I have with forging, I don't know how to pronounce it, but there's a lot less meat on the bone there in terms of it just says, the other one talked about, like, I think it was a fetal, oh, no, fetal, it was taken from aborted babies, tested with cells from aborted babies. This one, at least from what I can see, believes just that the involuntary intrusion and involuntary extraction violates her religious beliefs. But these strike me as legal conclusions. This is what Iqbal says you can't have. I don't know what her religion is. I don't know what part of it violates her religious beliefs. There's just no information telling me what's going on, and I wanted to give you a chance to address that. I'm happy that you gave me an opportunity to do that. Here's my argument with respect to that. Whether everyone likes it or not, she's alleging intellect conflict, okay? And this is the problem that I've been referring to consistently. Give me a little bit of help because I read it as her saying anything I don't want to do violates my religious beliefs without tying it to any particular religious principle, and that's what I'm, and I suspect Judge Strauss is looking for.  What I would say to that is, and it goes to my point, what she's saying is that God is telling her that it's her right to determine what she gives and what she receives, okay? When you're talking about bodily autonomy versus, for example, I don't want to give my social security number, I think that those are two different things, okay? When you're talking about your own body, your own DNA, a client gave me a Bible, and I've spent a lot of time reading it recently, and there's a lot of references to your temple and things of that nature. Is that in the pleading, and why isn't that, why shouldn't that be a pleading requirement under Iqbal? Your Honor. You know, you reading the Bible, I take it, but that's not what's pled in the lawsuit here. Your Honor, what was pled is that she had a specific objection related to God, related to testing. But that's all conclusory, and Brocken, just because I remember that complaint pretty well, it talked about fetal bovine cells were being used in whatever the testing mechanism was, and here we have none of that. We just have nothing that we have in Brocken for that one. I mean, why isn't that conclusory? Your Honor, we're limited to the record that we have, but I would encourage you not to reward an employer that doesn't engage in an interactive process, because this record could have been more complete, it could have been more full, had they just simply engaged in an interactive process, and they chose not to do it. If they found that it was confusing, I want everybody to understand, they were all not vaccinated. So there's obviously some sincere religious beliefs somewhere that they found that they were basing that decision on. So my reaction is, if there's sincere religious beliefs, and you're confused about what they're saying about testing, and you want to dig into it more, then interact with the plaintiff. There's a huge discrepancy in terms of sophistication between my clients. Well, I hate to belabor the point, but this is uniquely within the possession of your client, right? I mean, she could have said to you, this is why, in particular, it violates my religion. So I don't know what the interactive process would have done. It's not as if Hennepin County had some knowledge of your client's religion. I understand. But if they were confused, they could have asked, and she could have provided some backup. And that's, you know, I'm going to reserve 30 seconds or whatever I have. Thank you, Mr. Erickson. May it please the Court. Christiana Martinson, Assistant Hennepin County Attorney. This Court should affirm because the complaint does not plausibly allege religious discrimination. Appellant Borgheim doesn't explain what her religious beliefs are. Instead, she includes just two conclusory sentences about her belief in the complaint. And Appellant Colson specifically requested and agreed to saliva testing, which is all that the county required of her. Well, now, hang on a second. I remember the Brocken complaint. And the Brocken complaint, the only difference between the two that I can see is, A, what ended up happening. That goes to adverse employment action. But as to religious discrimination, this is identical, except for this one relies on fetal cells from babies, aborted babies. And the other one relies on fetal bovine cells. And I don't think that's a material difference between the two. So I don't know how you could possibly argue that at least the religious discrimination is different here than in Brocken. And, Judge, are you referring to Appellant Colson in your question?  Okay. I just wanted to clarify. Because you had said both of them. Neither one of them had alleged religious discrimination. Right. And I think the difference with Colson is that there are certain documents embraced by the complaint, those of the May 2022 accommodation request emails, in which Colson, she details her religious objections to vaccination and to nasal swab testing. But as to saliva testing, she does not. She says her objections are that it's embarrassing, it's inconvenient, but ultimately she communicates to the county that she agrees to saliva testing. In fact, she specifically requests it instead of nasal swab testing. So I think that's where the difference is. So you're saying with regard to the testing, not the vaccine, there's not enough in the complaint? Correct. Correct. We're not at this point disputing that there's enough in the complaint to state a religious objection to the vaccine. As to Colson. And I think the most important case for Colson is the Kale case that this court recently decided, where the court really emphasized the importance of matching the employee's religious objection to the applicable employment requirement. So here, that requirement is saliva testing. And we know this because the complaint at paragraph 26 alleges that Colson had to participate in saliva testing specifically. So as in Kale, the complaint doesn't plausibly allege that there's a conflict between saliva testing and Colson's religious beliefs, and that's shown by the documents embraced by the complaint that I just referenced. What about the first sentence, which is Christian and her body is a temple of the Holy Spirit? We have more with regard to Colson than we do with regard to the other one. And then it goes on to talk about the involuntary intrusion into her body, and she ties that to the involuntary weekly testing. Isn't that enough to get her over the hump, even with Brocken? I would argue, Your Honor, that it's not. I agree that it's more than what Appellant Borgheink has in paragraph, I believe it's 35. But the court also needs to look at those documents embraced by the complaint, where she specifically tells the county that she agrees to saliva testing and really gives a lot more detail as to her objections to vaccination and nasal swab testing. But does she also plead that the saliva testing is humiliating and degrading, and is that enough to be an adverse action, so to speak? Your Honor, that's also in those documents embraced by the complaint, and I would argue that that is not enough because that's not tied to religious beliefs. But on that point, you're not arguing that it's not enough. You're just saying it's not tied to religious beliefs. Correct.  Because the reason why I think Judge Grunder might be asking the question, but I'm interested in it anyways, is because it's unclear what de minimis means in Muldrow. Like de minimis, what is a disadvantageous change? And so there's still little lack of clarity on that, which is I think why he was asking the question, but certainly why I'm asking the question. Yeah, and I suppose I would say this. I think, I mean, as you said, there's some lack of clarity about what constitutes an adverse action. Like whether something is inconvenient or embarrassing, you know, I'm not sure that's the same kind of adverse action as, for example, the badge lock sort of outing you as unvaccinated or that was at issue in Cole, or like the kinds of switching assignments and things that were at issue in Muldrow. I think it's a closer question than that. But in this case, I don't know that the court needs to even get there because there's that lack of connection between the religious belief and the actual requirement at issue, which was the saliva test. Well, and we're talking about the terms and conditions of employment. And so, for example, I think the county would concede if you were to work for the Hennepin County Attorney's Office and they said for half an hour every morning you'll clean the bathroom, right? You'd probably say that that's a disadvantageous change in the terms and conditions. And for somebody like Cole or for Colson, that might be like cleaning the bathroom. I mean, I don't know, but there could be a situation where you're like, I absolutely don't want to do that. Now you're making it a term or condition of employment. Sure, that's fair. That's fair. The other thing I just want to touch on is this allegation that she had to use unpaid time to do the testing. And so the policy, which is another document embraced by the complaint, in fact, quoted in the complaint, lays out that employees are allowed to use paid time for testing. And I think if she's alleging that she did not use paid time, then that was her choice. It wasn't something that was required of her, and it wasn't an adverse action against her imposed by the county. So I think that's kind of the difference that I see there. So let me turn back to Appellant Borgheink. I think in that case, I mean, Ringhofer is the binding case. It has two guideposts that I see to help courts determine whether a plaintiff satisfies Rule 12 when alleging a religious belief in a Title VII case. The first is that connection to specific religious principles, and the second is a comprehensive religious belief system. And as for the second one, the court was quoting EEOC guidance to say, you know, there can be some overlap between a religious belief and a political belief, and that doesn't place the belief outside of Title VII protections, so long as it's part of a comprehensive religious belief system. So the complaint in this case for Borgheink doesn't meet those standards. It includes just those two conclusory sentences. And I think if the court compares those two sentences to the allegations that were made by the Ringhofer plaintiffs, including the anti-testing plaintiffs in that case, or Brocken, you'll find that those are much more detailed. They make specific references to Christianity, the principle that the body is a temple, quoting the Bible. As you mentioned, Judge Strauss, Brocken's very specific belief in not mixing her DNA with fetal bovine serum. So I think that's a difference there. You know, Iqbal and Twombly have to mean something, and the labels and conclusions that Borgheink has in her complaint aren't enough to meet that standard. I suppose I— Let me ask you this.  Did you think adverse employment action is the appropriate thing that we should be looking at with respect to Colson, or should we be looking at whether there was discipline? So in Ringhofer, the word discipline is used. However, you know, I'll recognize that it would be reasonable to interpret that as adverse employment action. Obviously, post-discipline usually is an adverse action, but there are other adverse actions that aren't discipline, right? Right. So is it limited to discipline, or is it adverse action broadly writ large? So, I mean, under Ringhofer, the word discipline is used, so, you know, it's more favorable to me to say, you know, it needs to be discipline. However, I'll say I can understand the argument that it should be adverse action more broadly, seeing as, you know, you have to go back to the language of the statute. It's not just the words on the page for Ringhofer. Thanks. And I think I would like to just briefly touch on the fact that, you know, I don't think this case is like the Cole case. For one thing, it was pled and has been argued as a failure to accommodate case. That's the framework used in Cale, and I think that's the framework that's appropriate here. And also, and I think I touched on this before, but saliva testing, according to the policy, you know, it's free of charge. You can do it in the privacy of your own home. It's unpaid time. It's really not the same as the badge lock and the sort of public shaming that was at issue in the Cole case. But, you know, at the end of the day, I don't think the court needs to reach adverse action because there's that disconnect between the specific employment requirement and the appellant's religious beliefs. So with that, I respectfully ask this court to affirm. Thank you. Mr. Erickson, I'll give you a minute. Thank you, Your Honor. I just quickly want to go over paragraph 35 of our complaint. Plaintiff Boerheink believes that every person has the God-given right to choose what he or she will inject into their body or extract from their body based on free will. Plaintiff Boerheink believes that mandatory vaccines and involuntary weekly testing violate her religious beliefs because it involves an involuntary intrusion into her body or involuntary extraction from her body. Free will is a very complex religious doctrine that implicates a lot of things. Yes, could she have done better without question? But the fact of the matter remains, first of all, I also want to point out to the court that both of these workers worked remotely, okay, which I think is extremely relevant. Can I ask you, what I'm really focused on is Colson and the consent question. They brought up the fact she consented to weekly testing. I'm wondering what your response is to that. My reaction to that is, Your Honor, when you're talking about somebody who has the choice of getting fired or keeping their job, she gave the least offensive accommodation that she could have and keep her job. And that's in the complaint? Yes. That was what she faced? I just want to be sure. I mean, what's in the complaint is that she was against weekly testing, and that was in the complaint. I'm asking about the job. Did she face a choice between the job and the weekly testing? Yes. Okay. She was threatened with termination. Thank you, counsel. We appreciate both counsel's arguments and appearance and briefing. Case is submitted.